Paul RHODES, Plaintiff,

v.

Richard M. VAN STEENBERG et al., Defendants.

Civ. No. 01784.

United States District Court
D. Nebraska.

Dec. 16, 1963.

114

Paul Rhodes, Howe, Neb., pro se.

William F. Ryan, Omaha, Neb., for defendants Patrick E. Corrigan and Jack Knudtson.

Clarence A. H. Meyer, Atty. Gen. of Nebraska, Lincoln, Neb., and Robert A. Nelson, Sp. Asst. Atty. Gen. of Nebraska, Lincoln, Neb., for defendants Richard M. Van Steenberg, Clarence A. H. Meyer, Cecil Brubaker, Robert A. Nelson, Gerald S. Vitamvas, Rush Clarke, Clarence S. Beck, James L. Macken, Virginia A. Schuetz, Leo Knudtson, Carl Sanders, Norval Houston, Albert W. Crites, John Greenholtz, and Maurice Sigler.

DELEHANT, Senior District Judge.

Certain preliminary notations should be made. Paul Rhodes is sometimes known as Paul E. Rhodes. Not only is he the sole plaintiff in this action; he was the sole plaintiff in an action recently pending in this court identified as Case No. 01322, being Rhodes v. Houston, et al. (D.C.Neb.) 202 F.Supp. 624, affd. 8 Cir., 309 F.2d 959, cert. den. 372 U.S. 909, 83 S.Ct. 724, 9 L.Ed.2d 719; and on March 8, 1963, as the sole plaintiff, he instituted in this court Case No. 01682 by the filing of an original complaint, and filed in that action an amended complaint on June 26, 1963, exactly thirty days before he filed his complaint in this action. On December 3, 1963, after due consideration, and in accordance with a memorandum opinion of like date, an order of this court was duly made and given granting and sustaining sundry motions to dismiss the amended complaint, and dismissing such amended complaint in Case No. 01682. The defendant, designated in plaintiff's complaint herein as "John Doe," is Patrick E. Corrigan, who, on November 2, 1961 was the duly elected, qualified and acting sheriff of Douglas County, Nebraska, of which the county seat is Omaha.

Of the defendants to this action, Richard M. Van Steenberg, Clarence A. H. Meyer, Cecil Brubaker, Rush Clarke, James L. Macken, Virginia A. Schuetz, Leo Knudtson, Carl Sanders, Norval Houston, Albert W. Crites, John Greenholtz and Maurice Sigler were parties defendant to Case No. 01322 (Rhodes v. Houston, et al.) and are parties defendant to Case No. 01682 (Rhodes v. Meyer,

et al.); Robert A. Nelson and Gerald S. Vitamvas are parties defendant to Case No. 01682, but were not parties to Case No. 01322; and Clarence S. Beck, Patrick E. Corrigan and Jack Knudtson were not, and are not, parties defendant to either of the earlier suits.

As briefly as may reasonably be, the plaintiff's complaint is first recalled in fairly complete outline.

He professes to find jurisdiction under "section 28 U.S.C.A. 1331, 28 U.S.C.A., 1343, and 42 U.S.C.A., 1981, 1983, 1985, 1986, 1987, 1988, and the United States Constitution Amendments IV, V, VI, VII, VIII, XIII and XIV, and Article 1, Section 9 of the United States Constitution, and sections of the Nebraska Statutes as follows: R.R.S.Neb.1943 reissue of 1956-7-105, 7-106, 29-2801, 29-2805, 29-2806, 29-2809, 29-2819." He adds, in the foregoing context, that the action is brought under the Constitution and Laws of the United States of America and the amount in controversy exceeds $10,000.00, exclusive of interest, costs and fees, and obviously undertakes thereby to support his jurisdictional reliance on section 28 U.S.C. § 1331.

He avers his United States citizenship, and his residence in Nebraska, which necessarily involves an assertion that he is a citizen of Nebraska, Constitution of United States, Article XIV, section 1. In a single numbered paragraph he asserts that at all times pertinent to his complaint, the defendant, Clarence A. H. Meyer was either the duly appointed deputy Attorney General, or the duly elected and acting Attorney General, of Nebraska; the defendant Gerald S. Vitamvas was either Assistant Attorney General or Deputy Attorney General of Nebraska; the defendants, Rush Clarke and Robert A. Nelson were Special Assistant Attorney Generals of Nebraska; the defendant Cecil Brubaker (whom he names as Cecil S. Brubaker) was Assistant Attorney General of Nebraska; the defendant

Norval Houston was the Sheriff of Morrill County, Nebraska, and the defendant Virginia A. Schuetz was the Clerk of the District Court of that county; and the acts charged in the complaint against such defendants, and against each of them, were performed, and each such defendant was acting in such performance, under the color and authority of the office of each such defendant.

In another paragraph of the complaint, he alleges that "on November 21, 1960 and at all times prior thereto,[1] the defendant, Richard M. Van Steenberg was the District Judge of the Seventeenth Judicial District of Nebraska, including Morrill County, Nebraska; that on November 22, 1961 the defendant, Patrick E. Corrigan, was the Sheriff, and the defendant, Jack Knudtson, was a deputy sheriff, of Douglas County, Nebraska; that at all times pertinent to the complaint the defendant, James L. Macken, was the County Attorney of Morrill County, Nebraska, and the defendants, John Greenholtz and Maurice Sigler, were respectively the deputy warden and the warden of the Nebraska State Penitentiary; that on November 21, 1960, and until January, 1962, the defendant, Clarence S. Beck was the Attorney General of Nebraska; and that in the performance by the several defendants in this paragraph named of the acts respectively attributed to them in the complaint, each of such defendants acted under the color and authority of his said office.

In paragraph V of the complaint, he alleges:

"That some time prior to November 21, 1960 the defendants Richard M. Van Steenberg, Clarence A. H. Meyer, Cecil Brubaker, Gerald S. Vitamvas, Rush Clarke, Clarence S. Beck, and Norval Houston entered into a conspiracy to deprive this plaintiff of his federal Civil Rights and his Federal Constitutional Rights and that all actions of all

1. Which the court understands necessarily to be limited to the time before November 21, 1960, which is identified in the complaint, and not to be unlimited.

defendants hereinafter alleged were made and done in the furtherance of said conspiracy to deprive this plaintiff of His Federal Civil and Constitutional Rights. That all defendants did all acts knowing that said acts were in the furtherance of said conspiracy and that the said defendants and each of them possessed the power and authority under the scope of their office and the power and authority of their office to prevent the deprivation of this plaintiff's Federal Constitutional Rights privileges and immunities and Federal Civil Rights."

In the next succeeding paragraph of the complaint, he further asserts:

"That on November 21, 1960, and on September 28, 1960, the defendants Richard M. Van Steenberg, Clarence A. H. Meyer, Cecil Brubaker, Rush Clarke, Clarence S. Beck, James L. Macken and Virginia A. Schuetz without a jury and over the written protests of this plaintiff tried this plaintiff in absentia and in the absence of this plaintiff for criminal contempt of court in the District Court of Morrill County, Nebraska and called witnesses produced evidence and took testimony in the absence of this plaintiff, all in violation of the IV, V, VI, VIII, XIII and XIV Amendments of the United States Constitution and at the conclusion of said trial in absentia entered a written order sentencing this plaintiff to nine months HARD LABOR in the Nebraska State Penitentiary in violation of the XIII and XIV Amendments of the United States Constitution, but did not order the clerk to issue a commitment or execution of said sentence to HARD LABOR."

The plaintiff next alleges in the complaint that notwithstanding the failure of the trial court, i. e. the District Court of Morrill County, Nebraska, to direct her so to do, the defendant, Virginia A. Schuetz on November 25, 1960, did issue a commitment to the Nebraska State Penitentiary, and deliver it to the defendant, Norval Houston, as sheriff of Morrill County, Nebraska, and that on January 16, 1961, at the direction of the defendant, Norval Houston, sheriff of Morrill County, Nebraska, the plaintiff was arrested by W. W. Schulz, sheriff of Cheyenne County, Nebraska in the Court House of Cheyenne County, Nebraska, and deprived of his liberty without probable cause, and without a warrant, claiming as his authority for such arrest, the commitment of the Clerk of the District Court of Morrill County, Nebraska, on November 25, 1960, supra.

The plaintiff then alleges that on January 16, 1961 (thus, on the day of his arrest) one John H. Kuns, District Judge of Cheyenne County, Nebraska (therefore, of the county in whose Court House the plaintiff had been arrested), granted the plaintiff a writ of habeas corpus against such arrest and imprisonment on the grounds that the District Court of Morrill County, Nebraska, had no power, authority or jurisdiction to try the plaintiff for contempt of court in absentia, and that the District Court of Morrill County, Nebraska, also had no power, authority or jurisdiction to sentence the plaintiff to commitment to the Nebraska State Penitentiary at hard labor for a period of nine months, and that such sentence was violative of, and repugnant to, the thirteenth and fourteenth amendments of the United States Constitution and was void; that on January 16, 1961 (thus, also on the day of his arrest) W. W. Schulz, sheriff of Cheyenne County, Nebraska, was served with such writ of habeas corpus, and on the same day made return thereto in writing, and produced the body of the plaintiff before the District Court of Cheyenne County, Nebraska, and John H. Kuns, the District Judge thereof, and attached to and made a part of such return and delivered to such court a copy of the judgment of the District Court of Morrill County, Nebraska, under date of November 21, 1960, supra, and a copy of the order of commitment issued by the

Clerk of the District Court of Morrill County, Nebraska, supra, in Case No. 4819 therein, supra, and made both of such copies a part of his return to the writ of habeas corpus; that a hearing was held before the Honorable John H. Kuns, Judge of the District Court of Cheyenne County, Nebraska, and the plaintiff was recommitted to the Cheyenne County, Nebraska, jail, and bond was fixed at $1,000.00 pending hearing set by the court for ten days later. But he then alleges that thereafter—and also on January 16, 1961, the District Court of Cheyenne County, Nebraska, the Honorable John H. Kuns, Judge thereof presiding, on the court's own motion, entered an order discharging and releasing and setting at large the plaintiff for the reason that the sheriff did not have a valid warrant or commitment authorizing the plaintiff's arrest, and the plaintiff was set at large and restored to his freedom; that no further order of court was entered in the contempt proceeding after January 16, 1961; and that criminal contempt of court is not a crime in the State of Nebraska.

The plaintiff next proceeds to allege that thereafter, and on January 23, 1961, without probable cause and without a warrant, plaintiff was again arrested and deprived of his liberty in the Cheyenne County, Nebraska Court House, that time by the defendants, Norval Houston and Leo Knudtson, at the direction of the defendants, Richard M. Van Steenberg, James L. Macken, Rush Clarke, Clarence S. Beck and Clarence A. H. Meyer, and in conspiracy with all other defendants in this action; that, also on January 23, 1961, plaintiff was, by the defendants committed to hard labor in the Nebraska State Penitentiary on the commitment of November 25, 1960, Case No. 4819, District Court of Morrill County, Nebraska, heretofore referred to,[2] and on said day and on days succeeding thereafter was photographed as convict numbered 21675, assigned as convict number 21675, given a discharge

date of July 5, 1961, with diminution of sentence allowed when such sentence would be served, and was imprisoned in the Nebraska State Penitentiary at hard labor, and committed and deprived of his liberty.

The plaintiff in his complaint then alleges that on or about December 25, 1960, the Supreme Court of Nebraska suspended the execution of such void judgment of November 21, 1960, supra, and such suspension remained in effect through September 1961; but that notwithstanding "the suspension of said judgment and sentence," the defendants in furtherance of the conspiracy theretofore alleged, supra, and to deprive "this defendant" (obviously meaning the plaintiff) of due process of law and equal protection of the law guaranteed by the fourteenth amendment of the Constitution of the United States, ignored the order of the Supreme Court of Nebraska suspending such judgment, and forced plaintiff to serve such sentence at hard labor through the discharge date of July 5, 1961, allowing diminution of sentence on the books and records of the Nebraska State Penitentiary as required by law, and revoked plaintiff's automobile driver's license and driving privilege as of November 25, 1960, in furtherance of the execution of such sentence as a convicted felon.

It is further alleged in the complaint that on the discharge date, July 5, 1961, plaintiff was not restored to his liberty but was held thereafter as a "safekeeper" in the Nebraska State Penitentiary for the Sheriff of Morrill County, Nebraska; that on January 23, 1961, the defendant, Maurice Sigler, as Warden of such penitentiary issued a receipt to the sheriff of Morrill County, Nebraska, required by a statute of Nebraska, that the sentence of the District Court of Morrill County, Nebraska, under date of November 21, 1960, in Case No. 4819, had been executed; and that on January 24, 1961, the sheriff of Morrill County, Nebraska, returned the commitment in Case No. 4819,

---

2. Thus obviously importing confusion into his very recent assertion, supra, that

his arrest on that day was "without probable cause and without a warrant."

118

under date of November 25, 1960, supra, to the Clerk of the District Court of Morrill County, Nebraska, with a written return showing that the sentence had been executed, and the plaintiff committed to hard labor; but that after July 5, 1961 the plaintiff could not secure, or be restored to, his liberty, and was deprived of his liberty in the Nebraska State Penitentiary after having completely served such sentence at hard labor; and thereafter, on or about August 15, 1961, the Honorable Edmund Nuss, a judge of one of the Judicial Districts of Nebraska, but not of the Seventeenth Judicial District, which includes Morrill County, made a trip to Morrill County, Nebraska, and entered an order in Case No. 4819, the contempt proceeding, fixing the plaintiff's bond for later appearance in the District Court at $3,000.00; that such bail bond was thereafter posted on August 21, 1961 and the plaintiff, on that day, was discharged from custody and restored to his liberty; but that, on or about October 31, 1961, without any further order of the District Court of Morrill County, Nebraska, or any order authorizing or directing her act, the defendant, Virginia A. Schuetz, Clerk of that court, issued a second order of commitment in Case No. 4819 in that court, and delivered it to the defendant, Norval Houston, sheriff of Morrill County, Nebraska, whereby it was ordered that plaintiff be again committed to hard labor in the Nebraska State Penitentiary, again to serve such sentence, all depsite the knowledge of all of the defendants that the first executed commitment was in the files of Case No. 4819; that on November 2, 1961, without probable cause or a warrant, the plaintiff was again arrested, this time by the defendants, Norval Houston and Leo Knudtson, in conspiracy with their codefendants, at the Hotel Fontenelle in Omaha, Nebraska; that the defendants, Jack Knudtson and Patrick E. Corrigan, the latter as sheriff of Douglas County, Nebraska, committed the plaintiff to the Douglas County, Nebraska jail, denied him the right to counsel on demand, and the right to file in the courts of Douglas County, Nebraska, a petition for a writ of habeas corpus which he had prepared; and forcibly removed the plaintiff from such jail to the Nebraska State Penitentiary, and on such day, plaintiff was committed to hard labor in the Nebraska State Penitentiary, and was thereby forced to serve his sentence at hard labor a second time, in accordance with the terms of such sentence; that the defendant, Maurice Sigler, issued a second receipt to the sheriff of Morrill County, Nebraska, showing a second execution of the sentence in Case No. 4819, District Court of Morrill County, Nebraska, and such sheriff, on November 3, 1961 made return to the commitment of October 31, 1961, showing its execution and to it attached the warden's second receipt; and that on November 2, 1961, the bail bond in Case No. 4819, supra, was in full force and effect, and had not been forfeited and its bondsmen had not been ordered to produce the plaintiff pursuant to the bond.

The plaintiff concludes the factual declarations of the complaint by alleging that he was forced to serve the full nine months sentence at hard labor, and was discharged therefrom and restored to his liberty by the Board of Pardons of Nebraska on July 29, 1962, and was denied diminution of sentence as required by the Nebraska Statute, in alleged violation of the due process and equal protection provisions of the fourteenth amendment of the Constitution of the United States; that on and after November 2, 1961, he was by the defendants assigned as Convict No. 22107 in the Penitentiary, and forced to serve the sentence a second time at hard labor; that all of the actions of the defendants, together with the alleged conspiracy, denied him his federal civil rights under the Constitution of the United States.

He alleges, finally, that he is an attorney at law and a real estate broker and, before November 21, 1960, was a duly licensed insurance and bonding agent and a farmer; and that as a result of the matters alleged, supra, he has suffered great pain and mental anguish, and will

continue so to suffer; has lost, and will lose, large sums of money by reason of being humiliated and held up to public scorn and derision by the defendants, and has "lost the sum of $4,200,000.00. That in addition thereto this plaintiff suffered punitive damages (sic) in the sum of $4,200,000.00."

He finally prays for judgment against the defendants and each of them jointly and severally, in the amount of $4,200,-000.00, and further demands punitive damages against the defendants and each of them in the amount of $4,200,000.00, and costs and "such other relief as this court deems just, proper and equitable."

Presently before the court for determination, after the service of briefs and the submission of oral argument, are two separate motions for the dismissal of the complaint, one tendered by the defendants, Patrick E. Corrigan and Jack Knudtson (filing 11), the other by all of the other defendants (filing 12). Both motions assert, in support of their allowance, these grounds:

a) that the complaint fails to state a claim upon which relief can be granted against the moving defendants (considered severally);

b) that plaintiff's alleged claim is not within the protection of the Federal Civil Rights Act or any other statutory or constitutional provision upon which plaintiff seeks to predicate his action;

c) that the complaint shows upon its face that the acts, if any, of the several moving defendants were performed in their respective capacities as public officers or judicial officers (as the case may be) of the State of Nebraska, and of its subdivisions or one of them (which offices have severally been identified, supra), and under the authority of such offices; and that each moving defendant, by virtue of his or her office, is, therefore, immune from liability under the Federal Civil Rights Act; and,

d) that the complaint is based upon the same facts and claims as those set forth in Case No. 01322, Rhodes v. Houston (D.C.Neb.) 202 F.Supp. 624, aff'd 8 Cir., 309 F.2d 959, cert. den. 372 U.S. 909, 83 S.Ct. 724, 9 L.Ed.2d 719, and that all matter presented by the complaint here is *res judicata*.

In addition to the foregoing, the motion of defendants Richard M. Van Steenberg and others (filing 12) assigns the following further grounds for its allowance:

a) that the complaint is based upon the same alleged facts as those asserted in Case No. 01682, Rhodes v. Meyer; and,

b) that the complaint is scandalous, impertinent, and wholly vexatious, and its only purpose is harassment of the defendants;

Finally, certain defendants assign special grounds for the allowance of their respective motions, as follows:

a) Robert A. Nelson, Gerald S. Vitamvas, Carl Sanders, Jack Knudtson, Albert W. Crites and John Greenholtz support their motion (tendered by them severally) by the contention "that absolutely no acts are alleged against any of them;" and,

b) Clarence A. H. Meyer, Cecil Brubaker, Rush Clarke and Clarence S. Beck contend that, on consideration of the complaint as a whole, it really charges no acts as against them, for the reason that, though the complaint alleges that those defendants (with others) "tried the plaintiff in absentia," and (except as to Cecil Brubaker) directed the arrest of plaintiff, "it is clear from plaintiff's description of their legal capacities that they would not and did not do so."

Alternatively, all defendants except Patrick E. Corrigan and Jack Knudtson move (in the event of the denial of their motion to dismiss) for the complete sus-

**120**

pension of pleading and proceedings in this case pending the final determination of Case No. 01682, Rhodes v. Meyer,[3] or, if such suspension be denied, that this case be consolidated with Case No. 01682, Rhodes v. Meyer. (also filing 12)

The complaint before the court is not a prime example of lucid and cohesive pleading. After the identification of the defendants, and their respective official positions, and the assertion of paragraph V, quoted supra, it abruptly proceeds to the assertion, also quoted supra, that "the defendants Richard M. Van Steenberg, Clarence A. H. Meyer, Cecil Brubaker, Rush Clarke, Clarence S. Beck, James L. Macken and Virginia A. Schuetz," "without a jury and over the written protest of this plaintiff," "on November 21, 1960, and on September 28, 1960 * * * tried this plaintiff in absentia and in the absence of this plaintiff for criminal contempt of court, in the District Court of Morrill County, Nebraska" and at the conclusion of the trial, in his absence, sentenced him to "nine months hard labor in the Nebraska State Penitentiary." That averment, at the point in the complaint where it is asserted, fails to articulate the trial within its reach into any proceeding against the plaintiff herein. But somewhat later, and at several places in his complaint, the plaintiff explicitly identifies Case No. 4819, in the District Court of Morrill County, Nebraska, as the proceeding in which the asserted trial of the plaintiff

occurred. The identification in that manner of Case No. 4819, District Court of Morrill County, Nebraska, brings the challenged trial into its own context in the light of a litigated case in a Nebraska court of record.

And the examination of the files in Case No. 4819, leads at once to Case No. 4772A in the same court, out of which Case No. 4819 directly arose, infra.

■ Case No. 4772A, District Court of Morrill County, Nebraska is a criminal proceeding. Its analysis discloses that it was commenced on November 21, 1959 by the filing in that court and case in behalf of the State of Nebraska, through its then Attorney General, the defendant Clarence S. Beck, of a complaint against Paul E. Rhodes, the present plaintiff, charging Mr. Rhodes with the commission on February 8, 1959, in Morrill County, Nebraska of the crime of arson by setting fire to and burning a store building used as a drug store, the property of Ray C. Neumann and Alma Neumann. Thereafter, and on a date which the record in that action leaves in some doubt by referring to it as November 13, 1959, which would have been eight days before the filing of the complaint, supra, Mr. Rhodes appeared in open court in that case, the present defendant, Albert W. Crites presiding as District Judge,[4] and on the reading to him of the complaint, demanded a preliminary hearing, which Judge Crites

3. Dismissed by order and pursuant to memorandum opinion dated December 3, 1963, i. e. exactly three months after the filing of the motion now adverted to.

4. Notice is here taken of the plaintiff's contention that Judge Crites was disqualified for service because, as is the fact, Morrill County is in the seventeenth judicial district of the state, and Judge Crites was—as he still is—the sole judge of the neighboring sixteenth judicial district. But the contention is utterly without legal merit. By section 12 of Article V of the Constitution of Nebraska, it is provided, and since 1920 has been provided, that:
"The judges of the district court may hold court for each other and shall

do so when required by law or when ordered by the supreme court."
And section 24–303, R.R.S.Neb.1943, Reissue of 1956, provides, in part, that:
"upon request of the judge or judges of [the district court of any county], any term in such district may be held by a judge of the district court of any other district in the state."
The custom within Nebraska of the flexible exchange of benches by the several district judges is familiar to every practicing lawyer of the state. And, as the constitution indicates (*supra*), *a district judge may be compelled* to serve beyond his own district in some instances where the law so requires, and on other occasions also upon direct order by the Supreme Court.

then set for December 4, 1959, and the court then released the defendant therein, Mr. Rhodes, on his own recognizance. On December 4 and 5, 1959, within such setting, the preliminary hearing was held before the District Court of Morrill County, Nebraska, Judge Crites presiding, and Mr. Rhodes being present in person and represented by counsel. Evidence was submitted and the parties rested; and the court found that the crime charged in the complaint had been committed and that there was probable cause to believe that Mr. Rhodes had committed the offense, and entered an order committing him to jail, and fixing bail at one thousand dollars. On December 7, 1959, Mr. Rhodes filed in that case an appearance bond in the penal sum of one thousand dollars. On January 11, 1960, the State of Nebraska, by its Attorney General, the defendant herein, Clarence S. Beck, filed in Case 4772A an information charging Mr. Rhodes with the crime of arson in like manner as he had been charged in the complaint, supra. On the same day, the sureties on his appearance bond surrendered Mr. Rhodes into the custody of Norval Houston, a defendant hereto, as sheriff of Morrill County, Nebraska, and Mr. Rhodes was arraigned upon the information, Judge Crites again presiding, and refused to tender a plea. The court, thereupon, entered in his behalf a plea of not guilty, remanded him to the custody of the sheriff, and ordered his confinement in jail until he should furnish bail, which was again fixed at one thousand dollars. Pursuant to such order he was, by Norval Houston, the

sheriff of Morrill County, Nebraska, confined in the Scotts Bluff County, Nebraska, jail, a course within the sheriff's discretion. On January 15, 1960, Mr. Rhodes provided a cash bond in the sum of one thousand dollars. Case No. 4772A has never been tried on its merits, and appears to be pending upon a motion in it, by Mr. Rhodes as defendant, for its dismissal on account of the lapse without trial of more than three terms of court, within the reach of Section 29–1203, R.R.S.Neb.1943, Reissue of 1956. The motion seems to have been submitted and to be under the consideration of the court.

The foregoing admittedly long synopsis of Case No. 4772A, District Court of Morrill County, Nebraska, has been made because that case is the basis of Case No. 4819 in that court, out of, and incidental to, which this suit arose.

Either on, or shortly before, January 11, 1960, Mr. Rhodes instituted in the County Court of Morrill County, Nebraska,[5] a proceeding for a writ of habeas corpus against Norval Houston, the sheriff of Morrill County, Nebraska, to obtain his release from the custody of the sheriff under commitment in Case No. 4772A, supra. In that proceeding, on January 11, 1960, the County Court of Morrill County, Nebraska, Judge Robert D. McFarland presiding, granted a writ of habeas corpus, fixed January 27, 1960 as the time for final hearing thereon, and entered an order discharging and releasing Mr. Rhodes from the sheriff's custody on his personal recognizance

5. Here, as briefly as may be, it is observed that in Nebraska the courts of record of general jurisdiction are the District Court; but in each county there is also a County Court possessing probate, and limited civil and criminal, jurisdiction. To the County Court also is committed the jurisdiction to issue writs of habeas corpus, which is concurrent with the jurisdiction in that area, of the District Courts, with this provision, however, that the District Court is by constitution and statute accorded the jurisdiction to review, on appeal or on writ of error, the judgments in such cases of the County Court. Chapter 29, Article 28, R.R.S.

Neb.1943, Reissue of 1956; section 25–1901, R.R.S.Neb.1943, Reissue of 1956; Article V, section 17, Constitution of Nebraska; Section 29–2823, R.R.S.Neb.1943, Reissue of 1956; State ex rel. Miller v. Cavett, 163 Neb. 584, 80 N.W.2d 692. In the administration of the habeas corpus jurisdiction which those two courts possess concurrently, the County Court is obviously (as it is also in criminal and other civil matters which are appealable from it to the District Court) a court inferior to the District Court. In 1960, the judge of the County Court of Morrill County, Nebraska (as was and is by law permissible) was not an attorney at law.

But, notwithstanding that order, the sheriff, apparently later in the same day, took Mr. Rhodes before the District Court in which, as has heretofore been recited, the arraignment was then held.

On January 27, 1960 the County Court of Morrill County, Nebraska, Robert D. McFarland, Judge presiding, made and entered in the habeas corpus proceeding pending therein, supra, what it denominated as a "Bench Warrant and Complaint" of which a true copy is set out in the body of the Information for Contempt of Court, copied in footnote 6 hereof, infra. That "Bench Warrant and Complaint" was not served. On February 1, 1960, Judge McFarland entered in his court an order "withdrawing" it.

That habeas corpus proceeding was appealed to the District Court of Morrill County, Nebraska, and in such appellate proceeding, Norval Houston, the sheriff, moved for the dismissal and quashing of the proceeding on the ground that the County Court had no jurisdiction to entertain it. But on April 26, 1960 hearing was had on that motion, and the District Court, Judge Edmund Nuss of the Tenth Judicial District presiding, found that the County Court did have jurisdiction over the habeas corpus proceeding, and denied and overruled the motion for its dismissal. (see, however, the opinion of the Supreme Court of Nebraska in McFarland v. State, infra).

That returns this court in its study to case No. 4819, in the District Court of Morrill County, Nebraska. It was instituted in the District Court of Morrill County, Nebraska, on July 29, 1960, through the filing in behalf of the State of Nebraska, by its Attorney General, Clarence S. Beck, (a defendant hereto) of an Information for Contempt of Court. Though of considerable length, it is set out in full in a footnote hereto,[6] the

6. The "Information for Contempt of Court" (omitting verifications) is copied in full. It is in this language:

"IN THE DISTRICT COURT OF MORRILL COUNTY, NEBRASKA

| "THE STATE OF NEBRASKA Plaintiff vs. PAUL E. RHODES, Defendant | INFORMATION for Contempt of Court |

"BE IT REMEMBERED that Clarence S. Beck, the duly elected, qualified and acting attorney general of the State of Nebraska, who prosecutes in the name of and by the authority of the State of Nebraska, comes here into open court at this the regular April Term, 1960, of the District Court of Morrill County, Nebraska, and gives the court to understand and be informed that at all of the times herein mentioned there was, and now is, pending in and before this court, an action, suit, proceeding and process entitled The State of Nebraska, plaintiff, vs. Paul E. Rhodes, defendant, wherein Paul E. Rhodes was charged by the State of Nebraska with the crime of arson; that on and before the 27th day of January, 1960, there was pending in the County Court of Morrill County, Nebraska, a habeas corpus proceeding entitled Paul E. Rhodes, relator vs. Norval Houston, Sheriff of Morrill County, Nebraska and Norval Houston, respondent, and that defendant, Paul E. Rhodes correctly believed and anticipated that an appeal would be taken from the final judgment of the county court in such habeas corpus proceedings to this court; that the Honorable Albert W. Crites was the judge of this court who had presided and was presiding over this court during all of the proceedings had in the above mentioned case entitled The State of Nebraska, plaintiff vs. Paul E. Rhodes, defendant, in this court, all of which was well known to the defendant; that one Robert D. McFarland was at all of the times herein mentioned the County Judge of Morrill County, Nebraska; that on the 27th day of January, 1960, the defendant, in the County of Morrill and State of Nebraska, then and there being, willfully unlawfully and contemptuously and with the intent to obstruct the proceedings and hinder the due administration of justice in the above entitled action, suit, proceeding and process then pending and before this court entitled The State of Nebraska, plaintiff vs. Paul E. Rhodes, defendant, and in any and all other actions, suits, proceedings, and processes then pending in and before this court, or which might thereafter be pending in this court in which the defendant Paul E. Rhodes was in any way involved, and to lessen and destroy the authority, dignity and integrity of courts generally and particularly this court, and to bring the courts

more accurately and exactly to disclose the charge against the plaintiff herein, whose presentation precipitated the trial, sentence and imprisonment of which he complains here.

On August 1, 1960, a writ for the attachment of the body of Mr. Rhodes for contempt under the information, copy of which is set out in footnote 6 hereof, was issued out of the District Court of Morrill County, Nebraska, pursuant to an order under that date of such court, the defendant herein, Richard M. Van Steenberg, Judge presiding, which writ was duly executed. On that day, Paul Rhodes was brought before the court, was granted one month to answer the information, and make his defense in anticipation of a trial, whose date was later to be fixed, and was released from custody, subject to the further order of the court. Mr. Rhodes made and filed his answer to the information. He also tendered sundry motions and other pleadings designed to procure the termination of the contempt proceeding against him, Case No. 4819, District Court of Morrill County, Nebraska, which were

of the State of Nebraska generally, and particularly this court, and the Honorable Albert W. Crites, the judge thereof, into public disrepute, and to scandalize them and cause the public to lose confidence in courts generally, and particularly in this court, and to intimidate this court, and the Honorable Albert W. Crites, the judge thereof, and to coerce this court and the Honorable Albert W. Crites, the judge thereof, to decide issues and matters in favor of the defendant Paul E. Rhodes, and to force and bring about by coercion, intimidation, threats and other acts the retirement of Albert W. Crites as a judge of this court and the substitution of another judge or judges in all matters pending in this court in which Paul E. Rhodes was in any way involved, and to prevent the Honorable Albert W. Crites from presiding as a judge of this court by incarcerating him in jail, and to deprive the State of Nebraska of its right to a fair trial in the above mentioned cases, actions, suits, proceedings and processes by a tribunal free and untrammeled by attempts at coercion, intimidation and threats of public odium and derision, did willfully, unlawfully and contemptuously attempt to obstruct the proceedings and hinder the due administration of justice in this court generally, and in the above mentioned actions, suits, proceedings and processes in particular, by doing and performing the acts and things hereinafter set forth and charged:

"That with the intent above alleged, and in the attempt above alleged, the defendant did on and immediately before the 27th day of January, 1960, in Morrill County, Nebraska, conspire with and aid, abet, assist, procure, counsel, persuade and cause Robert D. McFarland, who was the County Judge of Morrill County, Nebraska, to prepare, write, sign and issue out of the County Court of Mor-rill County, Nebraska, and to deliver to the Sheriff of Morrill County, Nebraska, a certain 'Bench Warrant and Complaint' of which the following is a copy:

"BENCH WARRANT
"IN THE COUNTY COURT OF MORRILL COUNTY, NEBRASKA

| | |
|---|---|
| Paul E. Rhodes, Relator<br>—vs—<br>Norval Houston and Norval Houston Sheriff of Morrill County, Nebraska, Respondent | BENCH WARRANT AND COMPLAINT |

"STATE OF NEBRASKA \} SS
COUNTY OF MORRILL \}

"TO Norval Houston, Sheriff of Morrill County, Nebraska:

"Whereas, Albert W. Crites, after being duly advised that Paul E. Rhodes, the relator herein was at that time, and had been since an earlier hour on that same 11th day of January, 1960, released on his personal recognizance by the County Court of Morrill County, Nebraska, under a Writ of Habeas Corpus duly granted, ordered, and issued by said county court and duly returned and endorsed by the respondent herein upon delivering the body of the relator in before and to said county court, did at and within the aforesaid county of Morrill, then and there being, ordered the confinement of the body of Paul E. Rhodes, aforesaid relator herein, at a purported arraignment held by said Albert W. Crites while purporting to act as district judge in the District Court of the 17th Judicial district in and for Morrill County, Nebraska in the court room in the County Court House in Morrill County at Bridgeport, Nebraska, on January 11, 1960.

"And whereas the aforesaid purported arraignment in the District Court was contrary and in violation of the statutes and

**124**

determined adversely to him. They need not be synopsized or discussed here.

Trial on the merits of the contempt proceeding against Mr. Rhodes was held by the District Court of Morrill County, Nebraska, the defendant, Richard M. Van Steenberg, Judge presiding, on September 6 and 7, 1960, and the case was taken under advisement by the court. However, further hearing being required in the proceeding, Mr. Rhodes was served on September 24, 1960 with notice that it would be had on October 10, 1960 at 10:00 o'clock A.M. Motions for continuance, partly on ground of illness of Mr. Rhodes, ensued; some continuances were granted, or at least suffered; but on October 31, 1960 such hearing was reset for November 21, 1960 at 10:00 o'clock A.M. Mr. Rhodes filed a further

motion for continuance with supporting showings. On November 21, 1960, the then pending motion for continuance was overruled, the further hearing was had, and the adjudication of contempt and sentence, supra, was pronounced and entered. Motion for a new trial was tendered, and on December 5, 1960 was heard and overruled. Mr. Rhodes, though notified of the hearings held on November 21, 1960 and December 5, 1960, failed to appear or to participate in either of them.

Of the judgment of November 21, 1960, and the denial on December 5, 1960 of motion for new trial, Mr. Rhodes sought review on a proceeding in error, by the Supreme Court of Nebraska. That court, pending its ruling, and by order dated December 23, 1960, not December 25,

lawes and constitution of the State of Nebraska and the Constitution of the United States, and was further void and a nullity and coram non judice.

"And Whereas, as a consequence of the aforesaid purported arraignment and purported orders entered therein, the relator herein was willfully and unlawfully deprived of his liberty heretofore granted him at the pleasure of this court, and the relator herein was willfully and unlawfully confined in the county Jail of Morrill County, Nebraska, by Norval Houston Sheriff of Morrill County, Nebraska, acting under purported orders issued by said Albert W. Crites during the court of or as a result of the aforesaid purported arrignment.

"And whereas the relator herein was transported out of this county of Morrill by Norval Houston, Sheriff of Morrill County, actang under purported authority of purported orders issued by said Albert W. Crites during the course of or as a result of the aforesaid purported arraignment, and was confined in the County Jail of another county under the purported authority of purported orders issued by said Albert W. Crites during the course of or as a result of the aforesaid purported arraignment, at the instruction of John Doe and Richard Roe, true and real names unknown, all contrary to and in violation of the Statutes and laws and the Constitution of the State of Nebraska and the Constitution of the United States, and all for the purpose of taking and confining the body of the relator herein beyond the jurisdiction of this court.

"And whereas the aforesaid Albert W. Crites by his actions and purported orders aforesaid did willfully and unlawfully and contemptuously disobey and offer resistance to the lawfuly processes and arders of this court and did willfully and unlawfully and contemptuously attempt to obstruct the proceeding and hinder the due administration of justice in suit pending before this court, and did tend to interrupt proceedings, all on January 11, 1960, at and within Morrill County, Nebraska, except after the removal of the body of relator herein, Paul E. Rhodes, from Morrill County, Nebraska.

"You are therefore commanded to forthwith pursue and arrest said Albert W. Crites and bring him before this court, and the Judge thereof, Robert D. McFarland, to be dealt with according to law.

"Given under my hand and the seal of the County Court of Morrill County, Nebraska, this 27th day of January, 1960, at Bridgeport, Nebr.

"BY THE COURT

(SEAL) Robert D. McFarland and to threaten to incarcerate the Honorable Albert W. Crites, a judge of this court, in jail for the purpose of preventing him from performing his duties as district judge generally and as a judge of this court, all contrary to the authority and integrity of this court and against the dignity thereof.

"/s/ Clarence S. Beck

CLARENCE S. BECK,
Attorney General"

1960 as plaintiff alleged, suspended the sentence, upon which sentence, however, on November 25, 1960, the clerk of the District Court, defendant Virginia A. Schuetz, had already issued a commitment, under which Mr. Rhodes was delivered to the penitentiary on January 23, 1961. Bail was fixed on August 15, 1961 at three thousand dollars, and was given and approved on August 21, 1961. It is reasonably certain, therefore, that Mr. Rhodes remained in the state penitentiary, in pursuance of the commitment bearing date November 25, 1960, from January 23, 1961 until August 21, 1961. He himself alleges in his present complaint that on the latter date he was "discharged from custody and restored to his liberty." But Mr. Rhodes failed to file briefs in his quest for review, and on October 17, 1961, the Supreme Court of Nebraska made and entered its order dismissing the error proceeding "for failure to file briefs under the provision of Rule 15" (i. e. of that court). The mandate reflecting that dismissal, also bearing date October 17, 1961, was on October 18, 1961, filed in the District Court of Morrill County, Nebraska, in Case No. 4819.

But after his confinement in the penitentiary, thus apparenty some time after January 23, 1961, Mr. Rhodes instituted in the District Court of Lancaster County, Nebraska (within which county the penitentiary is located) a proceeding against the defendant, Maurice Sigler, the Warden of the penitentiary, to obtain his release from the institution. In his petition in that proceeding, he contended "that the order of commitment was unauthorized and that he (was) being held under a sentence of the trial court which (had) been suspended by" the Supreme Court (see 172 Neb. 439, at p. 440, 109 N.W.2d 731, at p. 732). Hearing was had upon the petition, and the District Court made and entered a judgment or order denying the issuance of the writ. From that denial, Mr. Rhodes appealed. The Supreme Court on June 23, 1961 affirmed. Rhodes v. Sigler, 172 Neb. 439, 109 N.W.2d 731. The Supreme

Court of Nebraska in that ruling, appropriately refrained from passing upon the validity of the sentence of Mr. Rhodes for contempt of court, supra. That question was then pending before such Supreme Court on the proceeding in error for the direct review of such sentence. But, touching the status of Mr. Rhodes in his then residence in the penitentiary, the opinion said:

"We need not determine here whether the issuance of the order of commitment on November 25, 1960, was regular or irregular. As to that the rule is: If the proceedings subsequent to conviction are erroneous, such errors can be reviewed and corrected by proceedings in error in the regular course of the law, but not by the writ of habeas corpus. In re Application of Cole, 103 Neb. 802, 174 N.W. 509, 848.

"We think it clear that from the 21st of November 1960, when the contempt judgment was rendered, the relator was subject to be taken into custody and held pending further orders of the court. *Our order suspending the sentence did not suspend liability to that custody save and until the relator was admitted to bail. Relator is now being held in custody pending the determination of error proceedings from Morrill County. He is not being held as one serving the sentence imposed in that action.* "It appears from this showing that the sheriff had full authority under the provisions of section 29–1001, R.R.S.1943, to hold relator in a 'secure and convenient place of confinement.'" (Emphasis added.)

It is again recalled that it was on August 15, 1961, therefore, forty-three days after the filing of the opinion in Rhodes v. Sigler, supra, that Mr. Rhodes obtained the order, fixing the amount of bail. And six days later he gave bail and was released from his then current imprisonment. But it is here to be remembered, on the faith of the foregoing deliverance of the State's Supreme Court, that during the time of that confinement

126

he was "not being held as one serving the sentence imposed in that action," i. e., in Case No. 4819, District Court of Morrill County, Nebraska.

Reverting now to the coming down, and filing of the mandate of dismissal of the error proceeding in Case No. 4819, it is observed from the files in that proceeding that, pursuant to a praecipe therefor filed on October 30, 1961,[7] the defendant, Virginia A. Schuetz, Clerk of the District Court of Morrill County, Nebraska, issued a commitment in pursuance of the judgment and sentence of November 21, 1960, addressed to the sheriff of such county, directing the execution of that sentence. On November 3, 1961, that sheriff made return to the commitment, in which he declared that on November 2, 1961 he delivered Mr. Rhodes to the Nebraska State Penitentiary. On November 11, 1961, the present plaintiff, represented by competent counsel, filed in Case No. 4819, two separate motions, (a) to recall the commitment on the grounds that the Clerk of the District Court was without authority to issue a commitment; that the mandate of the Supreme Court had not been spread on the records of the District Court; that the issuance of the commitment was violative of Section 29–2305, R.R.S.Neb.1943, Reissue of 1956, and also of Section 29–2401 of such statute; and (b) for stay of execution of the sentence pending the making of an application to the Supreme Court of the United States for a writ of certiorari. Hearing was held in open court, John H. Kuns, Judge of the Thirteenth Judicial District presiding, on November 11, 1961, and on that day, an order of the court was made and given denying and overruling each and both of those motions.

On April 25, 1962, Mr. Rhodes also filed in the District Court of Morrill County, Nebraska, a handwritten motion for an "order directed to Maurice Sigler, Warden of Nebraska State Penitentiary to release and discharge the defendant" (i. e. Mr. Rhodes) "from custody by reason of facts occurring in the record of which the court has judicial notice," without other or further specification. He also filed a handwritten withdrawal of that motion. But, on May 21, 1962, the court, Judge Kuns presiding, considering both of those pleadings, entered an order denying and overruling both of them.

On April 26, 1962, Mr. Rhodes filed in that court a handwritten motion in the nature of an application for a writ of habeas corpus *ad prosequendum* in connection with a matter of litigation apparently not involved herein. On May 7, 1962, that court, Judge Kuns presiding, denied and overruled such motion.

Finally, on May 29, 1962, Mr. Rhodes filed in the District Court of Morrill County, a handwritten motion to vacate the order of May 21, 1962, supra. On June 5, 1962 the court, Judge Kuns presiding, considered such motion to vacate on a brief by Mr. Rhodes, and by order denied and overruled it.

In the interest of clarity, it is observed that all of the foregoing "post mandate" items are filed, and constitute parts of the record, in Case No. 4819, District Court of Morrill County, Nebraska. It does not appear that any appeal from, or other proceeding to review, any of those "post mandate" orders has ever been taken by Mr. Rhodes.

■ The foregoing analysis is, by this court, believed fairly and fully to disclose the allegations of the plaintiff's complaint now before the court in the setting out of which it arose. And to that setting, the plaintiff himself points instructively in the complaint. Thus directed, the court has explored the records which provide the setting. It is to that complaint that the several motions are directed. Those motions have been carefully submitted, and are ready for determination. Their orderly solution suggests that the court approach, first, the grounds common to both motions.

All of the moving defendants point to Case No. 01322, Rhodes v. Houston (D.C. Neb.) 202 F.Supp. 624, aff'd 8 Cir., 309

7. Therefore, exactly twelve days after the filing of the mandate.

F.2d 959, cert. den. 372 U.S. 909, 83 S.Ct. 724, 9 L.Ed.2d 719, and argue that it should be regarded as dispositive in their favor of the pending motions for dismissal, under the rule *res judicata.* Opposing that position, plaintiff principally insists that the rule may not presently be invoked because the ruling in Case No. 01322, Rhodes v. Houston, supra, was made, not after a trial of that action upon the merits but (comparably with the court's current position) in the course of the determination of sundry motions to dismiss the complaint. He seeks thereby to advance the position that the judgment in Case No. 01322, Rhodes v. Houston, supra, was "not on the merits," and, on that account is inoperative under the rule *res judicata,* to any extent, or in behalf of any party or parties defendant. That a judgment or decree, to constitute a bar to subsequent litigation upon the principle of *res judicata* must be on the merits is broadly true. Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195; Shepard v. City of Friend, 141 Neb. 866, 5 N.W.2d 108. But it does not follow that, to the applicability of the principle, the earlier judgment or decree must have rested upon a formal and final trial of the action in which it was made and given. For a judgment or decree entered on a sustained general demurrer (where such a pleading is tolerable), or motion to dismiss (within the practice of this court) for failure to state a claim on which relief can be granted against the moving defendant or defendants, is no less effective as *res judicata,* in respect of issues actually tendered by the granted pleading, and resolved by the judgment or decree entered thereupon, than a judgment or decree entered after final trial and on proof. Hickey v. Johnson (8 Cir.) 9 F.2d 498; Vinson v. Graham (10 Cir.) 44 F.2d 772; Divide Creek Irrigation District v. Hollingsworth (10 Cir.) 72 F.2d 859, 96 A.L.R. 937; Fowler v. Osgood (8 Cir.) 141 F. 20, 4 L.R.A., N.S., 824; Brooks v. Arkansas-Louisiana Pipe Line Company (8 Cir.) 77 F.2d 965; United States v. Glidden Company (6 Cir.) 119 F.2d 235, cert. den. 314 U.S. 678, 62 S.Ct. 182, 86 L.Ed. 542; Billings Utility Company v. Federal Reserve Bank of Minneapolis (D.C.Minn.) 46 F. Supp. 691; United States v. 48.9 Acres of Land in Pike County, Ark. (D.C.Ark.) 85 F.Supp. 133; United States v. Bower, (D.C.Tenn.) 95 F.Supp. 19; 50 C.J.S. Judgments § 643 et seq., p. 75 et. seq.

However, the reach of the doctrine of *res judicata* has certain widely recognized limitations. In its strict application the doctrine of *res judicata* ordinarily extends only to facts and conditions and claims, as they existed at the time the judgment or decree relied upon was rendered, and does not apply where, or to the extent that, there are changed conditions and new facts which did not exist at the time of the entry of such judgment or decree. 30A. Am.Jur. 379 Title, Judgments, section 335. Generally, too, and subject to some exceptions, the doctrine of *res judicata* does not operate to affect, either favorably or adversely, the rights of those who were neither parties, nor persons in privity with a party or parties, to the litigation in which the judgment or decree relied upon was entered. 30 A. Am.Jur. 441 et seq., Title Judgments, section 393. In Case No. 01322, Rhodes v. Houston, supra, the judgment or order sustaining the several motions to dismiss, and dismissing, the complaint (filing 76) was entered in and by this court (Judge Van Pelt presiding) on January 29, 1962. It foreshadowed the filing, shortly thereafter, of an explanatory opinion or memorandum; and that opinion or memorandum (filing 79) was filed on January 31, 1962. The opinion of the Court of Appeals, Eighth Circuit, affirming this court's order or judgment was filed on November 29, 1962. And, after denial of certiorari, the affirming mandate, dated January 21, 1963 (filing 88) was filed on February 23, 1963. Before January 29, 1962, when Case No. 01322, Rhodes v. Houston, supra, was decided in and by this court, even before September 21, 1961 when it was filed, the initial confinement of Mr. Rhodes in the state penitentiary had been undergone, and had been terminated. It

had extended, according to his averments, from January 23, 1961 to August 21, 1961, despite his contention that its correct termination date should have been July 5, 1961. And it was, by the plaintiff's complaint in Case No. 01322, Rhodes v. Houston, supra, made the very core of the claim there presented. More than that, by September 21, 1961, when the complaint in that case was filed, Mr. Rhodes' second confinement in the state penitentiary was probable and imminent, supra, and its threatened accomplishment was made the material upon which the third count, or cause of action, in that case was formulated, particularly against the defendants therein who were the justices, and the clerk, of the State's Supreme Court, but also and equally against all other defendants to that suit, with its prayer for injunctive relief against such anticipated confinement. Still further, shortly after the filing of Case No. 01322, Rhodes v. Houston, supra, and after Judge Van Pelt's denial on September 22, 1961 of a restraining order, Mr. Rhodes was again confined in the state penitentiary, where, as he alleges, he remained until July 29, 1962. He, therefore, was, and for nearly three months had been, so confined, on January 29, 1962, when Judge Van Pelt entered the judgment in that case. Hence, his initial imprisonment was a completed fact, and his second imprisonment was in current progress when Judge Van Pelt's final ruling was made. The last six months of Mr. Rhodes' second imprisonment, indeed, occurred after Judge Van Pelt's final ruling. But the basic fact of even that imprisonment was then in current progress, and its threatened inception had earlier undergone the consideration of Judge Van Pelt, who had denied a prayer for its restraint, supra.

In that setting, this court would be on solid ground if it were to regard Case No. 01322, Rhodes v. Houston (D.C.Neb.) 202 F.Supp. 624, aff'd 309 F.2d 959, cert. den. 372 U.S. 909, 83 S.Ct. 724, 9 L.Ed. 2d 719 as dispositive of all of the plaintiff's claim herein, insofar as it rests upon facts that existed when the ruling of this court in Case No. 01322, Rhodes v. Houston, immediately supra, was made adversely to the plaintiff herein, and in favor of the defendants hereto, who were also parties defendant to that suit. They are Richard M. Van Steenberg, Clarence A. H. Meyer, Cecil Brubaker, Rush Clarke, James L. Macken, Virginia A. Schuetz, Leo Knudtson, Carl Sanders, Norval Houston, Albert W. Crites, John Greenholtz and Maurice Sigler. They do not include Robert A. Nelson, Gerald S. Vitamvas, Clarence S. Beck, Patrick E. Corrigan and Jack Knudtson, or any of them.

But after thorough study of the file in this action, and of the factual history, in the way of judicial records, to which it directs the court, supra, it has been, and is, considered unnecessary to premise the present ruling, either upon the doctrine of *res judicata*, or upon the rule, related to but distinguished from it, of estoppel by judgment, and more appropriate to poise it upon the application of the principle of *stare decisis*. And the court, after a brief digression, will shortly proceed to the consideration of that disposition.

■ By way of that "brief digression," the court takes notice of the contention, common to both of the pending motions to dismiss, that the plaintiff's alleged claim is not within the protection of the Federal Civil Rights Act, or any other statutory or constitutional provision upon which plaintiff seeks to predicate the action. That that contention is of substantial significance is at once apparent. For upon coverage of the plaintiff's claim by the mentioned legislative and constitutional provision, the jurisdiction of this court depends. The community of Nebraska citizenship as between all of the parties to this suit places it beyond the jurisdictional reach of Title 28 U.S.C. § 1332(a) (1).

From the files in Case No. 01322, Rhodes v. Houston, supra, it appears that each motion to dismiss in that action also made an assertion, aimed at the issue of jurisdiction, essentially identical with that mentioned in the last preceding

paragraph. In that case, Judge Van Pelt appears not to have made explicit determination upon the question thus presented, but rather to have passed upon the motions before him upon the questions of the adequacy of the complaint to state a claim supporting the granting of relief, and of the related immunity to suit of the defendants. Confronted with a like situation, the court is presently pursuing a similar course. But it must not be understood as rejecting the jurisdictional position of the moving defendants, or as minimizing its vital significance, supra. Indeed, the writer of this memorandum acknowledges grave doubt whether, even on paper, the plaintiff has brought himself under the jurisdictional coverage of the Federal Civil Rights Act, whether that Act ever has been or, even with its present liberal application, is, operative to confer jurisdiction upon this court to determine, as between citizens of Nebraska, controversies that arise out of what is essentially a suit for damages on account of false imprisonment, or malicious prosecution, or both.

Finally, and with primary emphasis, both of the motions to dismiss assert, as grounds for their allowance:

a) That the complaint fails to state a claim upon which relief can be granted against the moving defendants (considered severally) ; and,

c) that the complaint shows upon its face that the acts, if any, of the several moving defendants were performed in their respective capacities as public officers or judicial officers (as the case may be) of the State of Nebraska, and of its subdivisions or one of them (which offices have severally been identified, supra), and under the authority of such offices; and that each moving defendant, by virtue of his or her office, is by established law, immune from liability to suit for such acts, if any, even to suits under the Federal Civil Rights Act.

In one sense, and in a practical way, the former of those two assertions embraces the latter, and an affirmative resolution of the latter requires a like answer to the former. For if the immunity contended for be affirmed, it is impossible to state a claim on which relief can be granted. The ultimate common ground in support of both of the pending motions to dismiss is the asserted failure of the complaint to state a claim upon which relief can be granted to the plaintiff against the several moving defendants. To that extent, the motions are severally formulated within Rule 12(b) (6), Federal Rules of Civil Procedure. In the administration of that rule, it has been authoritatively declared that a motion to dismiss a complaint on the ground just indicated should be granted and sustained if, but only if, the complaint at which it is directed, construed liberally in favor of the complaining plaintiff, and with the allowance of all reasonable inferences supportive of his pleading, is so far insufficient that it may not reasonably be supposed that, under it, competent evidence could be adduced which would support any judgment in favor of the plaintiff and against the moving defendant. Despite some inexact judicial observations, and occasional loose legal writing, the motion to dismiss provided for by Rule 12(b) (6) is not a surreptitious reincarnation of the former general demurrer, which was expressly abolished by Rule 7(c). That abolition meant what it said. Leimer v. State Mutual Life Assurance Company (8 Cir.) 108 F.2d 302; Sparks v. England (8 Cir.) 113 F.2d 579; Louisiana Farmers' Protective Union, Inc. v. Great Atlantic and Pacific Tea Company (8 Cir.) 131 F.2d 419; Musteen v. Johnson (8 Cir.) 133 F.2d 106; Publicity Building Realty Corporation v. Hannegan (8 Cir.) 139 F.2d 583; Cool v. International Shoe Company (8 Cir.) 142 F.2d 318; Dennis v. Village of Tonka Bay (8 Cir.) 151 F.2d 411; Tobin v. Chambers Construction Company (D.C.Neb.) 15 F.R.D. 47; Smedley v. Guy F. Atkinson Company (D.C.Neb.) 12 F.R.D. 355.

It must be understood that the court in the present ruling has accorded to the plaintiff the full measure of liberality to which he is thus entitled in the appraisal of his complaint, and of its validity in the face of the presently pending motions. This court has consistently so administered Rule 12(b) (6).

Each moving defendant, in supporting his or her motion to dismiss, first, places emphasis on the contention that for actions by him or her performed in the course and exercise of the duties of his official position in the government of Nebraska, he or she is immune to a suit of the present character. In aid of the consideration of that point, a regrouping by official classification of the several moving defendants is now offered. It follows:

| OFFICIAL POSITIONS | DEFENDANTS |
|---|---|
| 1. JUDGES OF COURTS OF RECORD OF GENERAL JURISDICTION, | Richard M. Van Steenberg<br>Albert W. Crites |
| 2. ATTORNEYS OF THE STATE OR SUBDIVISION THEREOF, | |
| a) Attorney General of Nebraska | Clarence A. H. Meyer<br>Clarence S. Beck |
| b) Deputy Attorney Generals of Nebraska | Clarence A. H. Meyer<br>Gerald S. Vitamvas |
| c) Assistant Attorney Generals of Nebraska | Cecil Brubaker<br>Gerald S. Vitamvas |
| d) Special Assistant Attorney Generals of Nebraska | Robert A. Nelson<br>Rush Clarke |
| e) County Attorney of Morrill County, Nebraska | James L. Macken |
| 3. CLERK OF COURT OF RECORD, | |
| Clerk of District Court of Morrill County, Nebraska | Virginia A. Schuetz |
| 4. STATE OR COUNTY PEACE OFFICERS, | |
| a) Members of Nebraska Safety Patrol | Carl Sanders<br>Leo Knudtson |
| b) Sheriff of Morrill County, Nebraska | Norval Houston |
| c) Sheriff of Douglas County, Nebraska | Patrick E. Corrigan |
| d) Deputy Sheriff of Douglas County, Nebraska | Jack Knudtson |
| 5. OFFICERS OF NEBRASKA STATE PENITENTIARY, | |
| a) Warden | Maurice Sigler |
| b) Deputy Warden | John Greenholtz |

The question first confronted upon this subject by the court is whether the several moving defendants' are respectively immune to a claim of the character here made on account of the alleged wrongs by them done to a claimant in the course and performance of the duties of their respective offices. Its answer is to be found in the identification of those offices in the light of their respective functions in the administration of justice in the courts of the state.

Involved are claims against (1) two judges of the District Court, a court of record of general jurisdiction; (2) two attorney generals, two deputy attorney generals, two assistant attorney generals, and two special assistant attorney generals, of Nebraska (recognizing that some of those officials successively occupied more than one such office), and the county attorney of Morrill County, Nebraska; (3) the clerk of the District Court of Morrill County, Nebraska; (4) the sheriffs of Morrill County and of Douglas County, Nebraska, and a deputy sheriff of the latter county; and two members of the Nebraska Safety Patrol; and (5) the warden and deputy warden of the Nebraska State Penitentiary.

The court again directs attention to Rhodes v. Houston (D.C.Neb.) 202 F. Supp. 624, aff'd 8 Cir., 309 F.2d 959, cert. den. 372 U.S. 909, 83 S.Ct. 724, 9 L.Ed. 2d 719 and, in particular, to the exhaustive and scholarly opinion in it of Judge Van Pelt, speaking for the court; and to the deserved adoption of that opinion by the Court of Appeals, Eighth Circuit. The writer of this memorandum joins, without reservation, in that appellate appraisal of the trial court's opinion.

While, as has already been made clear, the court, is not determining the present motions by according to Rhodes v. Houston, supra, the position of *res judicata*, and treating it as a mandatory controlling prior adjudication of the same case —or the essential features of it—Rhodes v. Houston, supra, is regarded here and now as having strongly persuasive sig-

nificance. And that significance arises out of the circumstance that it is a notably correct and carefully reasoned deliverance in a case which was indistinguishable from the present one, whose setting and basic averments were, in fact had to be, identical with those now advanced by the plaintiff. The material out of which both of them have been made has been the experience over a limited period of time of one man with a single, though not entirely simple, problem.

In support, therefore, of the instant ruling, the court now cites Rhodes v. Houston (D.C.Neb.) 202 F.Supp. 624, aff'd 8 Cir., 309 F.2d 929, cert. den. 372 U.S. 909, 83 S.Ct. 724, 9 L.Ed.2d 719 and, without individual recollection the many reported opinions cited in it, and Judge Van Pelt's careful analysis of them. It cites also the somewhat earlier opinion of this court, through the present writer, in Niklaus v. Simmons (D.C.Neb.) 196 F.Supp. 691, and particularly the discussion (following an extended historical analysis appropriate to the facts of that litigation) appearing on pages 712 to 718, inclusive, along also with the cases cited therein, and the supplemental opinion, id. at pages 719–720.

In like manner as this court, speaking through Judge Van Pelt, did in Rhodes v. Houston, supra, the court concludes that, as an imperative incident to the independence, security and stability of the administration of American justice, each of the several defendants is immune to a suit of the present character. This immunity arises initially in favor of the judges of the court. But as a rationally practical measure, it extends equally to the lawfully selected prosecutory representatives of the state, to clerks of courts of record, who perform the clerical tasks without which the courts would be able to operate only clumsily and falteringly, to the various peace officers who execute the process, writs and orders of the courts, and lastly to the prison staff members who, in obedience to judicial mandate, admin-

ister the punishment which the courts impose. See both Rhodes v. Houston, supra, and cases cited therein, and Niklaus v. Simmons, supra, and the authorities on which it explicitly rests.

■ Before leaving the present point, and as briefly as may be possible, it is observed that the plaintiff does not appear flatly to deny the validity of the rule of judicial immunity. Indeed, he argues that it exists and should be considered to shield Judge McFarland, and that, apparently, upon the theory that Judge Crites (at whom the "Bench Warrant and Complaint" was aimed) acted without authority or jurisdiction, even as an intruder, in his service, supra, in the District Court of Morrill County, Nebraska in the Rhodes litigation. The invalidity of that position has already been discussed herein (see footnote 4, supra). But the Supreme Court of Nebraska has also spoken directly upon the subject in the present context. Incident to Case No. 4819 in the District Court of Morrill County, Nebraska, an accusation of contempt of court, on account of the "Bench Warrant and Complaint" already discussed, was made on February 5, 1960 in that court against Robert D. McFarland, the County Judge who had presided over the habeas corpus proceeding, and entered and filed the "Bench Warrant and Complaint," charging Judge McFarland with contempt of court for his part in that incident. The District Court of Morrill County, Nebraska, upon trial, found and adjudged him to be guilty as charged, and imposed sentence upon him. McFarland appealed to the Supreme Court of Nebraska, which, on May 26, 1961, filed its opinion in McFarland v. State, 172 Neb. 251, 109 N.W.2d 397, and affirmed the judgment of the trial court. Reference is now made to the opinion in that case, which sternly declares the nullity of the habeas corpus proceeding before McFarland, and of his "Bench Warrant and Complaint." Naturally, this court does not give present heed to the language of the writer of that opinion fastening responsibility for the McFarland "Bench Warrant and Complaint" upon the present plaintiff. Whether Mr. Rhodes was so guilty was determinable—and was determined—in his own trial upon the contempt charge against him, supra. But the McFarland opinion is instructive touching the inevitably contemptuous quality of what was demonstrably done, whether the present plaintiff procured it, or participated in it, or not. It is cited here upon that point. But the thought is now further advanced that it necessarily operates also to demonstrate the complete fallacy of the conclusion of Judge Nuss in his ruling under date of April 26, 1960, supra. So far as that conclusion affirmed the broad general existence in the County Court of a jurisdiction over habeas corpus proceedings, concurrent with that of the District Court, it was on solid ground. But it wholly overlooked the objective of the particular habeas corpus proceeding then under scrutiny, namely the frustration of the District Court in its proceeding in a criminal prosecution for a felony, in which the District Court's jurisdiction had unquestionably attached. Very charitably characterized, the entire habeas corpus proceeding, especially in its "Bench Warrant and Complaint," facet, was a bizarre, shocking and indefensible discredit to judicial procedure.

The immunity of the several defendants to a suit of the character reflected in the complaint, which the court has found, supra, to exist requires the court also to conclude that the plaintiff's complaint fails to state a claim on which relief can be granted in favor of the plaintiff, and against any moving defendant hereto.

The court, therefore, further and finally concludes that the several motions to dismiss, and each of them, should be granted and sustained. And an order to that end is being made and given.

■ And, upon the granting and allowance of the motions to dismiss, the court is further entering an order and judgment dismissing the complaint and

this action, and the plaintiff's claim herein. The finality of the affirmative determination upon the issue of the defendants' immunity to suit makes that action appropriate, though what is yet before the court is the original complaint herein, unamended. Similar action was taken in Rhodes v. Houston, supra. See also in principle Brictson v. Woodrough (8 Cir.) 164 F.2d 107, cert. den. 334 U.S. 849, 68 S.Ct. 1500, 92 L.Ed. 1772; Meredith v. Van Oosterhaut (8 Cir.) 286 F.2d 216, cert. den. 365 U.S. 835, 81 S.Ct. 749, 5 L.Ed.2d 745; Niklaus v. Simmons, supra. The court proceeds in complete awareness of the liberal right of amendment for which provision is made in Rule 15. The plaintiff may or may not desire to undertake to amend his complaint. In the face of the immunity to suit of the defendants, the possibility of practical and effective amendment is, at least, dubious. But if plaintiff desires to amend he may, despite the entry of judgment of dismissal, seek leave to that end by timely motion, upon which if it be tendered, this court will rule.

Although the foregoing discussion sufficiently announces and explains the court's ruling upon the pending motions, brief observations may be offered concerning certain other matters which the record presents. Because they will be explanatory only, and not dispositive, they will be kept within narrow bounds.

The motion to dismiss (filing 12) served and filed by all of the defendants except Patrick E. Corrigan and Jack Knudtson asserts that the complaint herein is based upon the same alleged facts as those asserted in Case No. 01682, Rhodes v. Meyer, pending upon motions, when the motion to dismiss (filing 12) was served and filed, but since dismissed pursuant to motions to dismiss, supra. If and to the extent that the assertion just adverted to was advanced as the premise of a demand that the court apply the rule res judicata to the present case on the basis of the ruling in Case No. 01682, it is observed that the court has not pursued that course. The present ruling is made upon the basis of the instant complaint. It differs in detail, though not in essential substance, from the claim set out in the amended complaint in Case No. 01682. In the case just mentioned, the claim of plaintiff was based upon his trial and sentence on the contempt charge, along with his first confinement in the penitentiary, and upon the charge of the employment in Case No. 01322, Rhodes v. Houston, supra, both in this court and on appeal, of false statements, partly in affidavits, partly through statements in a brief and in oral argument on appeal. It was also considered by this court that, though not clearly pleaded, that case really advanced the plaintiff's contention of the invalidity of his second confinement in the penitentiary. In this action, the trial, conviction and sentence for contempt, the first imprisonment, and, much more clearly than in Case No. 01682, the second imprisonment are asserted, but the alleged misconduct in the presentation of Case No. 01322, Rhodes v. Houston, supra, is not involved. Moreover, there is, as has been observed, a notable difference in the personnel of the defendants as between the two cases. Maturely considered, the court has simply felt that the area of allowable application of the rule *res judicata* in this instance is too narrow, and the necessity for distinction, and the likelihood of confusion, too obvious to justify an attempted resort to the rule.

The same motion to dismiss (filing 12) assigns as a ground for its allowance, that the complaint is scandalous, impertinent and wholly vexatious, and its only purpose is harassment of the defendants. The short answer to that challenge is that the complaint is not scandalous or impertinent; and that whether it is vexatious or bent on harassment is not sufficiently certain to justify summary dismissal. Standing alone, it is almost certainly invulnerable to the latter charge. In association with other litigation lately brought here by the plaintiff, its freedom from the asserted vice

134

is unclear, a circumstance which the plaintiff may prudently consider.

 The moving defendants, Robert A. Nelson, Gerald S. Vitamvas, Carl Sanders, Jack Knudtson, Albert W. Crites and John Greenholtz, as has been observed, contend that "absolutely no acts are alleged against any of them." That the averment of their acts is loose and general is true. But there are allegations of acts by *all* defendants; and they save the complaint from dismissal on that ground alone, an immaterial circumstance since it is dismissed upon another specification. If the specification mentioned in this paragraph were the only ground relied upon by the named moving parties, their motion would be denied and overruled, and they would be remitted to discovery for the clarification of the plaintiff's claim.

·An essentially similar response is also made by the court to the contention of defendants, Clarence A. H. Meyer, Cecil Brubaker, Rush Clarke and Clarence S. Beck to the effect that their respective official stations negative the flat averment of the complaint that they did certain things. Here again, the resort of the moving parties, if that ground alone supported them, would have been to discovery.

It is simply noted that the alternative request of the defendants, except Patrick E. Corrigan and Jack Knudtson (filing 12), has become academic in view of the ruling now announced.

In passing, the court observes that the plaintiff alleges that he was subjected to trial "in absentia" on September 28, 1960. He appears not to have alleged what was done on that day.

The plaintiff, in paragraph VIII of the complaint alleges that, on January 16, 1961, Judge Kuns, as District Judge of Cheyenne County, granted to the plaintiff a writ of habeas corpus on certain assigned grounds, which would operate to nullify the adjudication of contempt and the sentence. The court prefers to suppose that the plaintiff thus pleads through inadvertence. For, in the same context, the plaintiff also and further pleads that later, and on the same day, Judge Kuns released him from custody, not upon grounds going to his conviction of contempt, but "for the reason that the sheriff did not have a valid warrant or commitment authorizing the arrest of this plaintiff." The sheriff's want of supporting record for the arrest, not infirmity in conviction, was the foundation for all the judge ultimately did.

Mention is made at various points in the complaint of the making by the sheriff of returns of the two commitments, each showing separately the "execution of the sentence." What is shown is the execution of the commitment by delivery of plaintiff to the warden, not the execution of the sentence. And the receipts of the warden for the person of plaintiff are similarly to be understood.

 Plaintiff complains that the several writs of commitment were issued by the clerk of the District Court without a special direction by the court, or a judge of the court, for such issuance. One such commitment was issued promptly after the entry of the judgment and sentence. In issuing that writ of commitment on the judgment and sentence, the clerk merely complied with her statutory duty. Section 25–2204, R.R.S.Neb.1943, Reissue of 1956; State ex rel. Hansen v. Carrico, 86 Neb. 448, 125 N.W. 1110. The other was issued promptly after the coming down of the mandate on dismissal of the appeal. Concerning it, plaintiff complains that no intervening order of the District Court was entered prior to the issuance of the writ of commitment. But since the mandate was operative as an affirmance, no intervening order by the District Court was necessary, and the writ was properly issued. State ex rel. Noble v. Sheldon, 26 Neb. 151, 42 N.W. 335; Section 29–2305, R.R.S.Neb. 1943, Reissue of 1956.

The plaintiff also contends that his arrest on or about November 2, 1961, i. e. under the second commitment, occurred at a time when the bail bond he had given in Case No. 4819, in the District Court of

Morrill County, Nebraska, was in full force and effect, and had not been forfeited, and his bondsmen had not been ordered to produce him pursuant to the bond. But that bond was one executed for his liberty pending the review on writ of error of the judgment and sentence in Case No. 4819, and, shortly before the issuance of the writ of commitment, the Supreme Court had dismissed the appeal, supra. The bond had, therefore, served its purpose; and the occasion for it had ended. The time had arrived for the service of the sentence. Accordingly the writ of commitment was issued upon the filing of a praecipe for it. The praecipe was filed in behalf of the State of Nebraska on October 30, 1961; and the writ was issued the same day.

With no affirmation that any of the reported opinions now cited are, or is, controlling in the present litigation, the court does refer (in addition to the cases already cited) to the related rulings in Rhodes v. Houston, 172 Neb. 177, 108 N.W.2d 807; Rhodes v. Crites, 173 Neb. 501, 113 N.W.2d 611; and Rhodes v. Star Herald Printing Company, 173 Neb. 496, 113 N.W.2d 658. At least, they are reflective of Mr. Rhodes' participation in a variety of litigation stemming from his initial prosecution.

The plaintiff, it is repeated, alleges that he is an attorney at law. That is true. From the records of the Supreme Court of Nebraska, it appears that he was born on July 27, 1919 in Nebraska, obtained in this state a common school and high school education, and studied at the University of Nebraska for six years in its College of Business Administration and School of Law, from the latter of which he graduated in its class of 1943. He was admitted to the bar of Nebraska on June 23, 1943, and to the bar of this court on July 27, 1943. Hence, while he prosecutes this action *pro se*, he does so, not as an untutored layman, but rather as an experienced practitioner at the bar, for he has long and actively pursued the practice of his profession. He is a resident and citizen of Nebraska, supra.